IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC JONES,                                     :

      Plaintiff,                            :

v.                                              :          Civil Action No. GLR-16-2662

JOSHUA JORDAN, et al.,                          :

                                   :

      Defendants.

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant Baltimore Police Department and Anthony W. Batts's (collectively, "BPD") Motion to Dismiss for Failure to State a Claim (ECF No. 22) Plaintiff Eric Jones's Amended Complaint (ECF No. 21). This 42 U.S.C. § 1983 (2012) action arises from the August 17, 2014 arrest of Jones by Defendants Joshua Jordan and Russell J. Tonks (the "Officer Defendants"). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will deny the Motion.[1]

---

[1] Also pending is BPD's Motion to Dismiss for Failure to State a Claim (ECF No. 14) Jones's original Complaint in this case (ECF No. 1). BPD and Batts filed this Motion on September 2, 2016. (ECF No. 14). In response, Jones filed an Amended Complaint on October 25, 2016. (ECF No. 21). When a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because the original complaint is superseded. <u>Venable v. Pritzker</u>, No. GLR-13-1867, 2014 WL 2452705, at *5 (D.Md. May 30, 2014), <u>aff'd</u>, 610 F.App'x 341 (4th Cir. 2015). Accordingly, the Court will deny the Motion as moot.

# I.  BACKGROUND[2]

On August 17, 2014, the Officer Defendants were investigating suspected drug activity at 3500 Hayward Avenue, Baltimore, Maryland.  (Am. Compl. ¶ 26, ECF No. 21).  They were looking for a person suspected of selling drugs who was "wearing all black."  (Id. ¶ 27).  The Officer Defendants observed Jones and another person walking out of a building on the 3200 block of the same avenue.  (Id. ¶ 29).  While Jones did not meet the description of the suspect, the Officer Defendants observed him walking on the sidewalk in a "hurried manner."  (Id. ¶¶ 30, 32, 34).  They stopped[3] Jones.  (Id. ¶ 33).

He provided them his name and other "pertinent information," but when they asked if he had anything illegal on him, he "attempted to end the discussion" and leave.  (Id.).  The Officer Defendants did not let Jones leave, and instead, they "employed a 'departmentally trained take down'" of Jones, "tackling" him to the ground.  (Id. ¶ 35).  He fell, face first, onto the curb.  (Id. ¶ 36).  As a result, Jones went to the hospital for five days, where he was diagnosed with various brain and shoulder injuries.  (Id. ¶ 37).  He underwent brain surgery and continues to receive treatment.  (Id. ¶ 38).  The take down left Jones with permanent injuries, including brain damage, preventing him from returning to his job.  (Id. ¶¶ 36, 38).

---

[2] Unless otherwise noted, the Court takes the following facts from Jones's Amended Complaint and accepts them as true.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

[3] As the Court will observe infra, the parties dispute whether the Officer Defendants conducted a "stop" of Jones lawfully under Terry v. Ohio, 392 U.S. 1, 30 (1968), when they initially questioned him.  The Court uses "stop" here only for its ordinary meaning rather than for its technical meaning under Terry and its progeny.

Jones was charged with seven counts related to possession and distribution of marijuana, assault, and interfering with arrest. (Id. ¶ 39). On September 29, 2014, the State's Attorney dismissed the charges, and a <u>nolle prosequi</u> was entered for all of Jones's charges. (Id. ¶ 45).

Jones filed the present action on July 22, 2016 against the Officer Defendants, Batts, the Baltimore Police Department, Unknown Individual Officers (the "John Doe Officers"), and Unknown Supervisors of the Baltimore Police Department (the "John Doe Supervisors"). (ECF No. 1). On October 25, 2016, Jones filed an Amended Complaint. (ECF No. 21).

In his nine-count Amended Complaint, Jones alleges: direct liability for violations of his constitutional rights under § 1983 against the Officer Defendants and John Doe Officers (the "Individual Defendants") (Count I); municipal liability for violations of his constitutional rights under § 1983 against the Baltimore Police Department, Batts, and the John Doe Supervisors (Count II); supervisor liability for violations of his constitutional rights under § 1983 against the John Doe Supervisors (Count III); bystander liability for violations of his constitutional rights under § 1983 against the John Doe Officers (Count IV); violations of Articles 24 and 26 of the Maryland Declaration of Rights against the Individual Defendants (Count V); Malicious Prosecution against the Individual Defendants (Count VI); Assault and Battery against the Individual Defendants (Count VII); False Imprisonment against the Individual Defendants (Count VIII); and False Arrest against the Individual Defendants (Count IX). (See id. ¶¶ 95–149). Jones seeks

damages and attorney's fees and costs.  (Id. ¶¶ 101, 109, 117, 127, 130, 136, 141, 148, 149).

BPD now moves to dismiss all counts against it for failure to state a claim upon which relief may be granted.  (ECF No. 22).  Jones filed an Opposition on December 2, 2016.  (ECF No. 26).  BPD filed a Reply on December 22, 2016.  (ECF No. 29).

## II.    DISCUSSION

### A.    Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)).  A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).  Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element.  Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d

435, 439 (4th Cir. 2012)), <u>aff'd sub nom.</u>, <u>Goss v. Bank of Am., NA</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. <u>Albright v. Oliver</u>, 510 U.S. 266, 268 (1994); <u>Lambeth v. Bd. of Comm'rs of Davidson Cty.</u>, 407 F.3d 266, 268 (4th Cir. 2005) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678.

## B.    <u>Analysis</u>

Under <u>Monell v. Department of Social Services</u>, a municipality, such as the Baltimore Police Department, is subject to suit under § 1983. 436 U.S. 658, 690 (1978). A plaintiff may sue a municipality under § 1983 if he suffered a constitutional violation at the hands of an employee acting under color of a municipal policy. <u>Id.</u> at 692. Under <u>Monell</u>, however, "a municipality is liable only for its own illegal acts." <u>Owens v. Balt. City State's Attorneys Office</u>, 767 F.3d 379, 402 (4th Cir. 2014). As a result, "[o]nly if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the <u>sine qua non</u> of <u>Monell</u> liability." <u>Id.</u> at 402. Liability under <u>respondeat superior</u> is insufficient under <u>Monell</u>'s standard. <u>Monell</u>, 436 U.S. at 693–94.

All § 1983 <u>Monell</u> claims have three elements: "(1) identifying the specific 'policy' or 'custom'[;] (2) fairly attributing the policy and fault for its creation to the

municipality; and (3) finding the necessary 'affirmative link' between identified policy or custom and specific violation." Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987), cert. denied sub nom., City of Fayetteville v. Spell, 484 U.S. 1027 (1988); see also Jones v. Chapman, No. ELH-14-2627, 2015 WL 4509871, at *12 (D.Md. July 24, 2015) ("[A] municipality is liable when a policy or custom is fairly attributable to the municipality as its own, and is . . . the moving force behind the particular constitutional violation." (citation and internal quotation marks omitted)).

There are four kinds of customs, policies, or practices that a plaintiff can allege: (1) the "decisions of a government's lawmakers;" (2) "the acts of its policymaking officials;" (3) "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights," known as a "failure to train" claim; and (4) "practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

"Although prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Owens, 767 F.3d at 403. To state a Monell claim under Rule 12(b)(6) sufficiently, a plaintiff "need only allege facts which, if true, 'state a claim to relief that is plausible on its face.'" Id. (quoting Iqbal, 556 U.S. at 678). The complaint's facts "need not be particularly detailed, and the chance of success need not be particularly high." Id. "A plaintiff fails to state a claim only when he offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action." Id. (quoting Iqbal, 556 U.S. at 678).

Here, Jones alleges that BPD subscribes to the third and fourth kinds of <u>Monell</u> customs, policies, or practices—failure to train officers about their legal duties to avoid constitutional violations and failure to correct persistent and widespread unconstitutional practices, known as a condonation claim. BPD offers three principal reasons for dismissing Jones's § 1983 claims under <u>Monell</u>.[4] First, BPD argues that Jones does not sufficiently state that he suffered an underlying constitutional violation to support his <u>Monell</u> claims. Second, BPD contends that Jones does not sufficiently state a failure to train claim. Third, BPD asserts that Jones does not sufficiently state a condonation claim. The Court begins by examining whether Jones sufficiently states an underlying constitutional violation.

### 1.        Underlying Constitutional Violation

BPD maintains that Jones does not sufficiently state that he suffered an underlying constitutional violation at the hands of any officers because the Officer Defendants did not violate Jones's constitutional rights when they arrested him on August 14, 2014. The Court disagrees.

Jones alleges that the Officer Defendants violated his rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

---

[4] BPD also submits that the Court should dismiss all of Jones's claims against BPD under the Maryland Declaration of Rights. Jones, however, only brings claims under the Maryland Declaration of Rights against the Individual Defendants. (Am. Compl. ¶ 128) ("This Count is brought by [Jones] against all of the individual Defendants, Defendants Jordan, Tonks[,] and/or other Unknown Members (John Does) of the police unit jointly and severally.").

unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV. Reasonableness of a seizure "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." Jones v. Ashford, No. TDC-14-3639, 2017 WL 221783, at *5 (D.Md. Jan. 18, 2017) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). The Fourth Circuit has identified three categories of police-citizen interactions: (1) an arrest, which requires probable cause; (2) a brief investigatory stop, which requires reasonable suspicion; and (3) brief encounters, which do not implicate the Fourth Amendment. Id. at *4 (citing United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002)).

"Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." Humbert v. Mayor of Balt. City, 866 F.3d 546, 555 (4th Cir. 2017) (alterations omitted) (quoting Cahaly v. Larosa, 796 F.3d 399, 407 (4th Cir. 2015)). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." Id. at 556 (quoting United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998)).

In contrast to probable cause, reasonable suspicion to justify a brief investigatory stop means "the totality of circumstances" demonstrate that criminal activity "may be afoot." United States v. Foster, 824 F.3d 84, 88–89 (4th Cir. 2016) (quoting United States v. Slocumb, 804 F.3d 677, 682 (4th Cir. 2015); United States v. Bumpers, 705 F.3d 168, 171 (4th Cir. 2013)). "While a mere hunch is insufficient, reasonable suspicion is less demanding than probable cause and may well fall[] considerably short of

8

satisfying a preponderance of the evidence standard." <u>Foster</u>, 824 F.3d at 89 (alteration in original) (quoting <u>United States v. Massenburg</u>, 654 F.3d 480, 485 (4th Cir. 2011)) (internal quotation marks omitted).

Here, Jones alleges that the Officer Defendants stopped him and asked him for his name and other information. (Am. Compl. ¶ 33). Jones pleads that after the Officer Defendants asked him whether he had anything illegal, he "attempted to end the discussion" and "leave the area." (<u>Id.</u>). In response, the Officer Defendants "did not allow [Jones] to freely exit the area" and "tackled" Jones to the ground, injuring him. (<u>Id.</u> ¶¶ 35–36). BPD argues that the Officer Defendants did not violate Jones's constitutional rights because they had reasonable suspicion to stop Jones and probable cause to arrest him. BPD asserts that Jones ran away from the Officer Defendants after they asked him whether he had anything illegal, giving the Officer Defendants reasonable suspicion to stop Jones under <u>Illinois v. Wardlow</u>, 528 U.S. 119 (2000).

There is no allegation, however, that Jones fled from the Officer Defendants. BPD relies only on an incident report of Jones's arrest to support its contention that Jones fled. (<u>See</u> Defs.' Mot. Dismiss Am. Compl. ["Defs.' Mot."] Ex. A, ECF No. 22-2). But at this stage, the Court may only consider the allegations in Jones's Complaint and generally may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. <u>See, e.g.</u>, <u>Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC</u>, 794 F.Supp.2d 602, 611

(D.Md. 2011).[5] What is more, BPD provides no justification for Jones's arrest after the Officer Defendants stopped him.[6]

In the Complaint, Jones states that the Officer Defendants "had no lawful authority to stop" him "nor any articulable suspicion that he was involved in criminal activity." (Am. Compl. ¶¶ 34, 35). Jones asserts that the Officer Defendants' take down of him "was without authority or basis." (Id. ¶ 36). Jones alleges that "they had no evidence of any crime or criminal activity" committed by Jones. (Id. ¶ 35). Jones further pleads that he was "the wrong person to be stopped" for the drug selling that the Officer Defendants were investigating and that Jones was "wearing different clothes and fitting a different description" than the suspect. (Id. ¶ 34). Finally, Jones asserts that he "was not present at the scene" of the area the Officer Defendants were investigating nor was there anything else "to relate him" to their investigation. (Id.).

Based on Jones's assertions, the Court concludes that he sufficiently states an underlying constitutional violation because the Officer Defendants lacked reasonable suspicion to stop Jones. See Foster, 824 F.3d at 88–89. The Court further concludes that

---

[5] BPD does not contend that the Court should consider the incident report or any other extrinsic evidence under any of the exceptions to this general rule, and the Court concludes that none of the exceptions are applicable here.

[6] In its Motion, BPD first argues that the Officer Defendants had probable cause to arrest Jones under Wardlow. In its Reply, however, BPD asserts only that the Officer Defendants had reasonable suspicion to stop Jones under Wardlow. If Jones fled unprovoked from the Officer Defendants in a high-crime area, the Officer Defendants may have had reasonable suspicion to stop Jones under Wardlow, but not probable cause to arrest him. See Wardlow, 528 U.S. at 125 ("We conclude Officer Nolan was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further." (emphasis added)).

he sufficiently states an additional constitutional violation because the Officer Defendants lacked probable cause to arrest Jones. See Humbert, 866 F.3d at 546.[7]

The Court, therefore, will not dismiss Jones's Complaint for failure to state an underlying constitutional violation.

### 2. U.S. Department of Justice, Civil Rights Division August 10, 2016 Report

Prior to addressing BPD's remaining two arguments about Jones's failure to train claim and condonation claim, the Court must first address the parties' arguments about a report the U.S. Department of Justice, Civil Rights Division, published on August 10, 2016 entitled, "Investigation of the Baltimore City Police Department" (the "DOJ Report"). The Civil Rights Division published the report as a result of its investigation into BPD practices. (Am. Compl. ¶¶ 71–72). Jones quotes and references the DOJ Report throughout the Complaint to allege that BPD fails to train officers and condones unconstitutional conduct by officers in violation of his constitutional rights under § 1983. BPD maintains that the Court should not consider Jones's allegations that rely on the DOJ Report because the report states that it is not evidence of liability and because the report is inadmissible under the Federal Rules of Evidence. Jones responds that the DOJ Report is admissible.

---

[7] The parties disagree over whether the Officer Defendants' initial stop of Jones was constitutional under Terry. The Court need not address Jones's initial stop, however, because even if the initial stop was constitutional, for the foregoing reasons the Officer Defendants' subsequent stop and arrest of Jones after he left the Officer Defendants was unconstitutional.

The parties both overlook that when courts consider a Rule 12(b)(6) motion, they "must accept the well-pleaded allegations of the complaint as true." <u>Albright</u>, 510 U.S. at 268. Hence, "the sufficiency of the complaint—and not any evidentiary matters—is at issue." <u>Osei v. Univ. of Md. Univ. Coll.</u>, 202 F.Supp.3d 471, 479 n.5 (D.Md. 2016). Thus, the Court will consider Jones's allegations that rely on the DOJ report and accept them as true, to the extent that they are factual assertions.[8]

### 3.      Failure to Train Claim

At bottom, the Court concludes that it will not dismiss Jones's failure to train claim against BPD.

When a plaintiff alleges "facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training," the plaintiff sufficiently states a failure to train claim. <u>Jones</u>, 2015 WL 4509871, at *18 (quoting <u>Lewis v. Simms</u>, No. AW-11-CV-2172, 2012 WL 254024, at *3 (D.Md. Jan. 26, 2012)).

BPD submits that Jones fails to state each of the three elements. The Court considers them in turn.

---

[8] BPD also argues that the Court should not consider Jones's allegations that rely on the DOJ Report because most of the allegations are legal conclusions, rather than factual allegations. The Court will consider this argument <u>infra</u> in the context of Jones's specific claims.

This ruling is not to suggest that the DOJ Report, in whole or in part, is admissible at trial or may be considered for the purposes of a motion for summary judgment. The Court is merely accepting the well-pleaded allegations as true under Rule 12(b)(6).

### i.     Nature of the Training

It is not sufficient to state "in broad, conclusory terms and in a variety of different ways" that the police department "failed to train and supervise its officers." <u>Peters v. City of Mount Rainier</u>, No. GJH-14-0955, 2014 WL 4855032 at *5 (D.Md. Sept. 29, 2014). Nor is alleging a "general laxness or ineffectiveness" sufficient. <u>Shields v. Prince George's Cty.</u>, No. GJH-15-1736, 2016 WL 4581327, at *9 n.11 (D. Md. Sept. 1, 2016) (quoting <u>Spell</u>, 824 F.2d at 1390). Instead, a plaintiff must allege a "specific deficiency" with the training. <u>Id.</u> Facts about "the sort of training" that BPD officers "actually receive" helps state a failure to train claim. <u>Jones</u>, 2015 WL 4509871, at *20 (quoting <u>Hall v. Fabrizio</u>, No. JKB-12-754, 2012 WL 2905293, at *2 (D.Md. July 13, 2012)).

Here, BPD argues that Jones does not identify the nature of any BPD training and only relies on the DOJ Report's legal conclusion that officers were incentivized to increase their arrest numbers during the relevant time period. The Court disagrees. Jones, quoting the DOJ Report, alleges that BPD "relies on deficient training on a broad array of substantive policing functions" and "numerous important topics," specifically pointing to lack of "proper[] train[ing]" on "use of force," "de-escalation," "stops, searches, and arrests," and "how to supervise and investigate misconduct." (Am. Compl. ¶ 88). Quoting the DOJ Report, Jones also pleads that BPD trained its officers to "prioritize short-term suppression, including aggressive use of stops, frisks, and misdemeanor arrests." (<u>Id.</u> ¶ 80).

Thus, Jones does not simply state "in broad, conclusory terms" that BPD failed to train and supervise its officers, <u>see</u> <u>Peters</u>, 2014 WL 4855032 at *5, nor does he allege a

"general laxness or ineffectiveness" with BPD's training, see Shields, 2016 WL 4581327, at *9 n.11. Rather, Jones states "the sort of training" that officers "actually receive:" training that teaches officers to prioritize short-term suppression and aggressively stop, frisk, and make misdemeanor arrests. See Jones, 2015 WL 4509871, at *20. Jones also identifies "specific deficienc[ies]" with the training: lack of proper training on use of force; de-escalation; stops, searches, and arrests; and how to supervise and investigate misconduct. See Shields, 2016 WL 4581327, at *9 n.11.

The Court, therefore, concludes that Jones has sufficiently stated the nature of the training for his failure to train claim.

### ii.     Deliberate or Conscious Choice by the Municipality

A "municipality's failure to train its employees" must constitute a "deliberate indifference to the rights of persons with whom the untrained employees come into contact" to satisfy § 1983. Connick, 563 U.S. at 61 (alterations omitted) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Only when there is deliberate indifference can a city's failure to train "be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. (quoting Canton, 489 U.S. at 389). Generally, deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quoting Board of Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)). A municipality may be deliberately indifferent "if the policymakers choose to retain" a training program despite "actual or constructive notice" that an omission in the program causes officers "to violate citizens' constitutional rights." Id. (citing Bryan Cty., 520 U.S. at 407). Alleging deliberate

14

indifference, however, as with stating any other <u>Monell</u> claim under Rule 12(b)(6), only requires a plaintiff to "allege facts which, if true, 'state a claim to relief that is plausible on its face.'" <u>Owens</u>, 767 F.3d at 403 (quoting <u>Iqbal</u>, 556 U.S. at 678).

Here, Jones asserts that BPD established of a Force Investigation Team (FIT) to respond to, investigate, and report officer use of force, revealing that officers' unconstitutional behavior was "well recognized." (<u>See</u> Am. Compl. ¶ 58). BPD contends that this allegation "shows" that BPD was not deliberately indifferent. (Defs.' Mot. at 11, ECF No. 22). BPD contends that establishing FIT constitutes a "specific and affirmative step" that defeats establishment of deliberate indifference, relying on <u>Grayson v. Peed</u>, 195 F.3d 692 (4th Cir. 1999) and <u>Lytle v. Doyle</u>, 326 F.3d 463 (4th Cir. 2003). (Defs.' Mot. at 12). The Court disagrees with BPD for at least three reasons.

First, the Court is unable to assess, at this stage of the case, whether and to what extent BPD actions or policies, such as establishing FIT, defeat Jones's alleged deliberate difference. What BPD's establishment of FIT "shows" is a question on the merits of Jones's failure to train claim, which the Court cannot consider when reviewing the Complaint under Rule 12(b)(6). <u>See</u> <u>Edwards</u>, 178 F.3d at 243–44 (quoting <u>Martin</u>, 980 F.2d at 952) ("The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the . . . merits of a claim.").[9]

Second, when reviewing the Complaint under Rule 12(b)(6), the Court must "draw all reasonable inferences in favor of the plaintiff." <u>E.I. du Pont de Nemours & Co. v.</u>

---

[9] Indeed, BPD's reliance on <u>Grayson</u> and <u>Lytle</u> underscores this point, because both cases were decided at the summary judgment stage rather than the motion to dismiss stage. <u>Grayson</u>, 195 F.3d at 692; <u>Lytle</u>, 326 F.3d at 463.

Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011).  As a result, the Court must infer that BPD's establishment of FIT reveals it was aware of constitutional violations, as Jones pleads, rather than that BPD was not deliberately indifferent, as BPD argues.

Third, BPD's reliance on Grayson and Lytle is misplaced.  Both cases concluded that the failure to train claim failed as a matter of law because the plaintiff had not proven a deficiency in the training to begin with, not simply because "specific and affirmative steps" were taken to correct known deficiencies.  See Grayson, 195 F.3d at 697 ("Sheriff Peed still could not be held liable [because] appellant has not pointed to any actionable deficiency in Sheriff Peed's policies, customs, or training." (emphasis added)); Lytle, 326 F.3d at 473–74 ("The Lytles have not provided any evidence that additional training would have resulted in Lieutenant Brewer or the other Norfolk police officers responding any differently." (emphasis added)).

The Court, therefore, will not dismiss Jones's failure to train claim for a failure to state deliberate indifference.[10]

### iii.    Causation

For Monell claims, a plaintiff must show that the custom, policy or practice "is the moving force behind the specific constitutional violation."  Robinson v. Prince George's Cty., No. PJM-09-181, 2011 WL 1743263, at *5 (D.Md. May 6, 2011) (citing Spell, 824

---

[10] BPD also submits that Jones does not sufficiently allege supervisory liability as to Batts because the Baltimore Police Department established FIT under Batts.  To establish supervisory liability, a plaintiff must demonstrate deliberate indifference. Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)).  For the foregoing reasons, the Court will not dismiss Jones's supervisory liability claim against Batts for failure to plead deliberate indifference.

F.2d at 1387), aff'd, 465 F.App'x 238 (4th Cir. 2012). When, as here, the alleged custom is not facially unconstitutional, the custom is the moving force only if a plaintiff proves that the custom caused his constitutional violation. Id. (citing Spell, 824 F.2d at 1387). Proof that the custom was "likely" to cause a particular violation is not sufficient to prove causation. Spell, 824 F.2d at 1387 (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). Instead, an "affirmative link" between the custom and the violation must be proven. Id. (quoting Tuttle, 471 U.S. at 823). Proving an affirmative link requires showing a "close fit" between the custom and the constitutional violation. Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

For failure to train claims, an affirmative link means that the deficiencies in training "make occurrence of the specific violation a reasonable probability rather than a mere possibility." Spell, 824 F.2d at 1390. In other words, the deficiencies in training made the specific violation "likely to happen in the long run." Id. "The focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." Canton, 489 U.S. at 390.

Here, BPD argues that Jones does not sufficiently plead a link between the deficient BPD training he alleges and the alleged constitutional violations he suffered. The Court disagrees. As described above, Jones pleads that BPD training teaches officers to prioritize short-term suppression and aggressively stop, frisk, and make misdemeanor arrests. (Am. Compl. ¶ 80). Meanwhile, BPD allegedly fails to properly train officers on use of force, de-escalation, stops, searches, and arrests. (Id. ¶ 88). Jones states that these deficiencies in training "during the same time period" of his August 17, 2014 arrest, (id. ¶

89), caused the Officer Defendants to violate Jones's constitutional rights. (Id. ¶ 93). The Officer Defendants allegedly stopped Jones without articulable suspicion and arrested him without probable cause. (Id. ¶¶ 35–36). They allegedly stopped and arrested him by employing a take down that severely injured his head. (Id. ¶¶ 35–38).

Based on Jones's assertions, the Court concludes that he plausibly states that BPD's training deficiencies caused his constitutional injury. See Robinson, 2011 WL 1743263, at *5 (citation omitted). Jones sufficiently states that the training deficiencies were not just "likely," but were the "affirmative link" to his alleged unconstitutional stop and arrest. See Spell, 824 F.2d at 1387 (citation omitted). An affirmative link is present because there is a "close fit" between the training deficiencies—BPD training officers to aggressively stop, frisk, and make arrests, while not properly training officers on use of force, de-escalation, stops, and arrests—and the Officer Defendants stopping Jones without articulable suspicion, employing a take down that severely injured his head, and arresting him without probable cause. See Carter, 164 F.3d at 218. Thus, the Court will not dismiss Jones's failure to train claim for failure to allege plausibly that BPD's training deficiencies caused his constitutional injury.

In sum, the Court will not dismiss Jones's failure to train claim against BPD. The Court next considers Jones's other claim under Monell: his condonation claim.

### 4.     Condonation Claim

"Under th[e] [condonation] theory of liability, a city violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" Owens, 767 F.3d at 402 (quoting Spell, 824 F.2d at 1390) (alterations in

original).  Here, BPD argues that Jones does not sufficiently state a condonation claim against BPD.  At bottom, the Court disagrees and will not dismiss Jones's condonation claim.  Jones sufficiently states that BPD had actual or constructive knowledge of unconstitutional conduct by officers, BPD condoned it due to its deliberate indifference, and BPD's condonation caused Jones's constitutional injury.

### i.    Knowledge and Deliberate Indifference

Generally, bringing a condonation claim requires a plaintiff to prove "a 'persistent and widespread practice of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'"  Id.  (quoting Spell, 824 F.2d at 1391).  Both elements "can be inferred from the 'extent' of employees' misconduct." Id. (quoting Spell, 824 F.2d at 1391).  Only "widespread or flagrant" misconduct are sufficient.  Id. at 403 (quoting Spell, 824 F.2d at 1387).  "Sporadic or isolated" misconduct is not.  Id.

While proving a condonation claim "is no easy task," alleging a condonation claim is, "by definition, easier."  Id. at 403.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only support his condonation claim with facts which, if true, "state a claim to relief that is plausible on its face."  Id. (quoting Iqbal, 556 U.S. at 678). The facts "need not be particularly detailed," and a plaintiff fails to state a condonation claim "only when he offers 'labels and conclusions' or formulaically recites the elements" of his condonation claim.  Id. (quoting Iqbal, 556 U.S. at 678).

Here, BPD argues that Jones does not sufficiently allege widespread or flagrant constitutional violations by BPD. BPD contends that Jones relies on the DOJ Report to only highlight its legal conclusions, aside from two examples of improper <u>Terry</u> stops that Jones identifies. The Court disagrees.

Jones, relying on the DOJ Report, pleads that "incident reports and interviews with officers and community members" describe officers "regularly approach[ing] individuals standing or walking on City sidewalks to detain and question them and check for outstanding warrants, despite lacking reasonable suspicion to do so." (Am. Compl. ¶ 74). Jones further asserts that "in a sample of over 7,200 pedestrian stops reviewed by the Justice Department, only 271—or 3.7 percent—resulted in officers issuing a criminal citation or arrest," and "many of those arrested based upon pedestrian stops had their charges dismissed upon initial review" by supervising authorities. (<u>Id.</u> ¶¶ 74, 77). "Such low 'hit rates' are a strong indication that officers make stops based on a threshold of suspicion that falls below constitutional requirements," Jones alleges. (<u>Id.</u> ¶ 77).

In addition to allegations about improper <u>Terry</u> stops, Jones makes allegations about arrests without probable cause. He asserts that "from 2010–2015, supervisors at Baltimore's Central Booking and local prosecutors rejected over 11,000 charges made by BPD officers because they lacked probable cause or otherwise did not merit prosecution." (<u>Id.</u> ¶ 74). He states that a "review of incident reports" describes "many examples of offices making unjustified arrests." (<u>Id.</u>).

The Court concludes that Jones alleges enough facts to state that BPD has a custom, policy, or practice of making unconstitutional stops and arrests, the "extent" of

which is "widespread or flagrant" enough for a condonation claim. See Owens, 767 F.3d at 403 (quoting Spell, 824 F.2d at 1387). In Owens, the plaintiff pleaded that "reported and unreported cases" established that BPD had a custom, policy, or practice of "suppressing exculpatory evidence in criminal prosecutions" and that "numerous successful motions" challenging such suppressions demonstrated that BPD knew of the evidence suppression and condoned it. Id. at 402–03. The Fourth Circuit held that the cases and motions were factual allegations supporting the plaintiff's condonation claim. Id. The court further held that the plaintiff's assertion that BPD withheld such evidence on "multiple occasions could establish a 'persistent and widespread' pattern of practice." Id. Similarly, in this case Jones's assertions as to incident reports, interviews, and dismissed charges are factual allegations that, if true, could plausibly support a condonation claim. See id. at 403–04. That BPD officers stopped other individuals without reasonable suspicion and arrested them without probable cause—on as many occasions as Jones states—could establish a "persistent and widespread" pattern of practice, the "hallmark of an impermissible custom." Id. at 403 (quoting Spell, 824 F.2d at 1386).

The Court, therefore, will not dismiss Jones's condonation claim for failure to allege plausibly BPD's knowledge or deliberate indifference.

### ii. Causation

Having alleged a custom, policy, or practice of making unconstitutional stops and arrests, Jones must still sufficiently plead a causal connection between the custom and the constitutional injury Jones allegedly suffered. Spell, 824 F.2d at 1391. Generally, a

"sufficiently close causal link is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." Id. When reviewing the Complaint under Rule 12(b)(6), however, a plaintiff "need not 'plead the multiple incidents of constitutional violations' that may be necessary at later stages" to allege causation plausibly. J.A. v. Miranda, No. PX-16-3953, 2017 WL 3840026, at *7 (D.Md. Sept. 1, 2017) (quoting Jordan by Jordan v. Jackson, 15 F.3d 333, 339–40 (4th Cir. 1994)).[11] Rather, it is sufficient that a plaintiff allege that the municipality "was aware of ongoing constitutional violations" by the municipality's officers and that the municipality's failure to discipline its officers "allowed" a custom, policy, or practice "of unconstitutional violations to develop." Id. (quoting Garcia v. Montgomery Cty., No. JFM-12-3592, 2013 WL 4539394, at *5 (D.Md. Aug. 23, 2013)).

Here, BPD argues that Jones does not sufficiently plead that BPD has a custom, policy, or practice of condoning unconstitutional stops and arrests that caused Jones's constitutional injury. The Court disagrees. At this stage of the case, Jones must only allege that BPD was aware of the unconstitutional stops and arrests by its officers and

_____

[11] Some courts have questioned whether Jordan remains good law because the Fourth Circuit decided it before the Supreme Court established Rule 8(a)'s plausibility standard in Twombly and Iqbal. See, e.g., Taylor v. Somerset Cty. Comm'rs., No. RDB-16-0336, 2016 WL 3906641, at *10 (D.Md. July 19, 2016); Cook v. Howard, 484 F.App'x 805, 810 (4th Cir. 2012). The Court relies on Jordan to the extent that Jones's allegations still satisfy Twombly and Iqbal's plausibility standard, as this Court has done in other recent cases. For example, in Miranda, this Court concluded that the plaintiff sufficiently stated a condonation claim because he plausibly alleged that the municipality had a custom, policy, or practice of violating citizens' constitutional right to record police conduct and alleged that other, similar violations also occurred. 2017 WL 3840026, at *7–8. The Court concluded that the plaintiff plausibly alleged a condonation claim, relying in part on Jordan, without separately addressing whether the plaintiff pleaded the causation element. See id.

that its failure to discipline the offending officers condoned this custom. See <u>Miranda</u>, 2017 WL 3840026, at *7 (quoting <u>Garcia</u>, 2013 WL 4539394, at *5). For the reasons stated above, the Court concludes that Jones does so. Thus, the Court will not dismiss Jones's condonation claim for failure to allege plausibly that BPD's custom, policy, or practice caused his injury.

In sum, the Court will not dismiss Jones's condonation claim against BPD. Accordingly, the Court will deny BPD's Motion.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Defendants Baltimore Police Department and Anthony W. Batts's Motion to Dismiss for Failure to State a Claim (ECF No. 22). A separate order follows.

Entered this 18th day of September, 2017

_____/s/_____
George L. Russell, III
United States District Judge
