IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC JONES, :

    Plaintiff, :

v. :    Civil Action No. GLR-16-2662

JOSHUA JORDAN, et al., :

    Defendants. :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Joshua Jordan ("Ofc. Jordan") and Russell J. Tonks's ("Ofc. Tonks") (collectively, "Officer Defendants") Motion for Summary Judgment (ECF No. 94) and Plaintiff Eric Jones's Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment ("Cross-Motion for Partial Summary Judgment") (ECF No. 104). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will deny both Motions.

### I.    BACKGROUND[1]

On August 17, 2014, the Baltimore Police Department ("BPD") received two 911 calls regarding drug trafficking on Paton Avenue in Baltimore, Maryland. (Defs.' Mot. Ex. A ["911 Calls"] at Aud. 389920–21, ECF No. 94-3). One of the callers reported that

---

[1] Unless otherwise noted, the facts outlined here are set forth in Jones's Amended Complaint (ECF No. 21). To the extent the Court discusses facts that Jones does not allege in his Amended Complaint, they are uncontroverted and the Court views them in the light most favorable to the non-moving party. The Court will address additional facts when discussing applicable law.

approximately forty individuals were engaged in drug transactions near the intersection of Paton and Denmore Avenues. (Id. at Aud. 389920). Both callers identified a man dressed in all black, wearing a black hat, as the dealer. (Id. at Aud. 389920–21). At 3:17 p.m., responding to a dispatch, Officer Defendants arrived at the scene. (Defs.' Mot. Ex. F ["Radio"] at Aud. 389925, ECF No. 94-8).

Upon arrival, Ofc. Tonks confirmed via BPD radio transmission ("radioed") that there were thirty to forty people on the 5200 block of Denmore Avenue, near Paton Avenue. (Id.; Jordan Dep. at 197:1–3, Apr. 23, 2018, ECF No. 104-7).[2] Ofc. Jordan appeared to identify the dealer, radioing, "Curbie, he's running right now." (Radio at Aud. 389925; Jordan Dep. 198:15–20, ECF No. 104-7). Ofc. Tonks responded, "Which way is he running?" (Radio at Aud. 389925). Ofc. Jordan radioed that the suspect, dressed in all black, with a slim build, had disappeared up an alley and that he "can't find him." (Radio at Aud. 389926; Jordan Dep. 202:1–7, ECF No. 104-7). One of the Officer Defendants then radioed that he was going towards "Wilton Heights,"[3] presumably to search for the fleeing suspect. (Radio at Aud. 389926). That Officer Defendant then radioed, confirming his own location as "Florence [Avenue]," which is at least two blocks away from the dispatch site. (Id.). A few seconds later, Ofc. Tonks asked Ofc. Jordan, "Still got eyes on him?" (Radio at Aud. 389927; Jordan Dep. 203:3–8, ECF No. 104-7). Ofc. Jordan stated he was still

---

[2] The parties' Exhibits include different selections of pages from the same April 23, 2018 deposition of Ofc. Jordan. (Compare ECF No. 104-7, with ECF No. 94-10). For ease of reference, the Court will specify the source Exhibit in each citation.

[3] Wilton Heights is a church located three blocks west of the intersection of Paton and Denmore Avenues.

2

looking for him. (Radio at Aud. 389927). At 3:18:40 p.m., Ofc. Jordan reported that he was "going up Elmer [Avenue]." (Radio at Aud. 389928; Jordan Dep. 207:4–8, ECF No. 104-7). Elmer Avenue is at least two blocks away from the dispatch site and does not intersect with Paton Avenue.

Much of what happened next is hotly disputed. What is not disputed is that, at some point, Officer Defendants stopped Jones and another unidentified individual near the corner of Denmore and Hayward Avenues.[4] (Jordan Dep. 48:3–10, ECF No. 104-7; Jones Dep. 185:8–12, Sept. 13, 2018. ECF No. 94-5). At that time, Jones was fifty-two years old, was working part-time as a plumber, and had spent "maybe a couple days" at an apartment complex several blocks southeast of the corner of Denmore and Hayward Avenues, though his permanent address was in a different neighborhood of North Baltimore. (Pl.'s Mot. Ex. O ["Criminal Case Docket"], ECF No. 104-18; Jones Dep. 156:1–12, 163:1–164:11). All parties agree that Jones was not free to leave, though it is disputed whether Officer Defendants ordered Jones to sit on the curb or to lie face-down on the ground. (Compare Jordan Dep. 51:5–14, ECF No. 104-7, with Jones Aff. ¶¶ 12–13, ECF No. 104-5, and Jones Dep. 223:5–11, ECF No. 104-6). It is undisputed that Jones tried to leave at some point thereafter. Officer Defendants allege they asked Jones if he had anything illegal on his person, at which point he left without answering. (Jordan Dep. 75:2–6, Apr. 23, 2018, ECF

---

[4] To get to this corner via car, the most direct route Ofc. Jordan could have taken would have been to drive down Florence Avenue and then turn onto Hayward Avenue to reach Denmore Avenue, the opposite end of the block from the site of the drug activity that prompted the 911 calls.

3

No. 94-10; Tonks Dep. 79:6–80:2, Apr. 17, 2018, ECF No. 94-9).[5] Jones states Officer Defendants "started asking about my identification and were rude to me" but "[a]s I did nothing wrong, I got up and started walking away." (Jones Aff. ¶ 14). Officer Defendants argue Jones ran away; Jones denies running. (Jordan Dep. 75:5–6, 17–18, ECF No. 94–10; Jones Aff. ¶¶ 14–19). It is undisputed that Ofc. Jordan tackled Jones to the ground shortly thereafter. (Jordan Dep. 75:9–13, ECF No. 94–10; Tonks Dep. at 50:15–19, ECF No. 94-9; Jones Aff. ¶ 16).

Officer Defendants' radio calls punctuate these disputed events and provide a rough timeline of what occurred. At 3:20:22 p.m., Ofc. Jordan radioed, "He's on the run." (Radio at Aud. 389929; Jordan Dep. 208:15, ECF No. 104-7). One of the Officer Defendants radioed, "Heading down to Florence [Avenue]." (Radio at Aud. 389929). Ofc. Tonks then radioed, "We got him." (Radio at Aud. 389929; Jordan Dep. 208:16–17, ECF No. 104-7). Officer Defendants at that point reported their location as the 5200 block of Florence Avenue. (Radio at Aud. 389929).

At 3:25:20 p.m., one of the Officer Defendants reported a "1014"[6] at Hayward and Florence. (Radio at Aud. 389930). At 3:34:49 p.m., Officer Defendants called in a "1038"[7] for an approximately fifty-year-old male with facial abrasions, presumably Jones. (Radio at Aud. 389931). Officer Defendants then transported Jones to Sinai Hospital. (Pl.'s Mot.

---

[5] The parties' Exhibits include different selections of pages from the same April 17, 2018 deposition of Ofc. Tonks. (Compare ECF No. 104-8, with ECF No. 94-9). For ease of reference, the Court will specify the source Exhibit in each citation.
[6] A 1014 is a call for a "wagon." (Jordan Dep. 232:1–3, ECF No. 104-7).
[7] A 1038 is a request for a medic. (Jordan Dep. 235:14–18, ECF No. 104-7).

4

Summ. J. Ex. M ["Hospital Records"], ECF No. 104-15; Radio at Aud. 389933; Jordan Dep. 246:7–8, ECF No. 104-7). Jones suffered bilateral subdural hematomas, traumatic subarachnoid hemorrhage along the left cerebral convexity, and small right anterior frontal lobe hemorrhagic contusions. (Hospital Records at 3, 5). As a result of these injuries, Jones underwent brain surgery. (Id. at 5).

Jones's Hospital Records indicate that he tested positive for cocaine use. (Hospital Records at 8). Bags of suspected cocaine and marijuana were found in Jones's sock, (Defs.' Mot. Ex. E ["Incident Report"] at 3, ECF No. 94-7), though Jones asserts that no chemical analyses were performed to verify the identity of the substances. (Jones Aff. ¶ 33). After being discharged, Jones was charged with: (1) Controlled Dangerous Substance ("CDS") possession of marijuana; (2) CDS possession of marijuana L/T 10 G; (3) second degree assault; (4) resisting arrest; (5) CDS possession of paraphernalia; (6) CDS possession with intent to distribute; and (7) CDS possession, not marijuana. (Criminal Case Docket). Jones was acquitted of all counts except for CDS possession with intent to distribute, for which the prosecutor entered a nolle prosequi. (Id.).

On July 22, 2016, Jones sued Officer Defendants, as well as BPD and former BPD Police Chief Anthony W. Batts (collectively, the "BPD Defendants") and Unknown Individual Officers and Unknown Supervisors of the BPD. (ECF No. 1). On October 25, 2016, Jones filed an Amended Complaint, alleging: a violation of the Fourth and Fourteenth Amendments to the U.S. Constitution for unlawful search and seizure brought under § 1983 (Count I); two supervisory liability claims for violation of the Fourth and Fourteenth Amendments brought under § 1983 (Counts II and III); a violation of the Fourth

5

and Fourteenth Amendments for fabrication of evidence brought under § 1983 (Count IV); violation of Articles 24 and 26 of the Maryland Declaration of Rights (Count V); malicious prosecution (Count VI); assault and battery (Count VII); false imprisonment (Count VIII); and false arrest (Count IX). (Am. Compl. ¶¶ 95–149). Jones seeks monetary damages. (Id. at 38).

On December 4, 2017, the Court bifurcated the claims against Officer Defendants from the claims brought against BPD Defendants, essentially staying the case with respect to BPD Defendants until after the resolution of Jones's claims against Officer Defendants. (Dec. 4, 2017 Order, ECF No. 42).

On December 14, 2018, Officer Defendants filed a Motion for Summary Judgment. (ECF No. 94). Jones filed an Opposition and Cross-Motion for Partial Summary Judgment on January 11, 2019. (ECF No. 104). On January 31, 2019, Officer Defendants filed an Opposition and Reply. (ECF No. 111). On February 13, 2019, Jones filed a Reply. (ECF No. 112).

## II.     DISCUSSION

**A.     Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored

6

information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A).  Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make

7

a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

When the parties have filed cross-motions for summary judgment, the court must "review each motion separately on its own merits to 'determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). Moreover, "[w]hen considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Id. (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)). This Court, however, must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993). If the evidence presented by the nonmovant is merely colorable, or is not significantly probative, summary judgment must be granted. Anderson, 477 U.S. at 249–50.

**B.    Analysis**

Officer Defendants move for summary judgment on Jones's claim for punitive damages and as to all counts except Counts II and III, which Jones directs at the other Defendants.[8] Jones counters that summary judgment cannot be granted in Officer

---

[8] Officer Defendants argue that Count III should be dismissed because a claim cannot proceed against an unidentified person. See Owens-El v. Kapfhammer, No. L-10-

8

Defendants' favor on any count because there are genuine disputes of material fact with respect to each claim. Jones also moves for summary judgment in his favor as to Counts I, IV, V, VII, VIII, and IX. The Court considers each claim in turn.

1. **Unlawful Search & Seizure & Excessive Force (Count I)**

   a. **Unlawful Search & Seizure**

Seizure occurs when "in view of all [of] the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Gray, 883 F.2d 320, 322 (4th Cir. 1989) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). "[I]n some circumstances a person may be detained briefly, without probable cause to arrest him," but "any curtailment of a person's liberty by the police must be supported by at least a reasonable and articulable suspicion that the person seized is engaged in criminal activity." Reid v. Georgia, 448 U.S. 438, 440 (1980). An investigatory detention of a citizen, known as a Terry stop, curtails liberty and, therefore, "must be supported by reasonable articulable suspicion that the individual is engaged in criminal activity." United States v. Black, 707 F.3d 531, 537 (4th Cir. 2013) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). The officer must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Griffin, 589 F.3d 148, 152 (4th Cir. 2009) (quoting United States v. Cortez, 449 U.S. 411, 417–418 (1981)). "[T]he officer must be able to point to specific and articulable facts which, taken

---

3213, 2011 WL 1869594, at *1 (D.Md. May 13, 2011). Because Count III is not brought against Officer Defendants and the Court has bifurcated claims against Officer Defendants from the claims against the BPD Defendants, the Court will not consider Count III at this time.

together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21.

Here, it is undisputed that when Officer Defendants stopped Jones, Jones was not free to leave. (Jordan Dep. 49:6–10, 51:9–17, ECF No. 104-7).[9] There are, however, genuine disputes of material fact as to why Officer Defendants stopped Jones and whether Officer Defendants had a reasonable articulable suspicion that Jones was engaged in criminal activity before stopping him. Officer Defendants maintain that Jones "was a member of the group that scattered upon seeing marked police vehicles in an open-air drug market."[10] (Id. at 52:8–11; 219:21–220:1; Tonks Dep. at 72:11–21, ECF No. 104-8). But Officer Defendants testify that they did not see Jones engage in a drug transaction. (See Tonks Dep. 77:16–19, ECF No. 94-9). Ofc. Jordan states in passing that "we observed [Jones] in a group believed to be involved in a [drug] transaction," (Jordan Dep. 75:3–4, ECF No. 94-10), but in their report, Officer Defendants state their reason for stopping Jones was that they saw him "walking out of the 5200 block of Denmore Avenue in a hurried manner." (Incident Report at 3). Jones admitted that Officer Defendants approached him on the corner of Hayward and Denmore, but denied being part of, or seeing, a group of individuals at the other end of the 5200 block of Denmore Avenue. (Jones Dep. 185:8–12,

---

[9] Officer Defendants maintain that they asked Jones to sit on the curb, but Jones testified that he was ordered to lay face down on the asphalt. (Compare Jordan Dep. 51:7–8, ECF No. 104-7, with Jones Aff. ¶¶ 12–13, and Jones Dep. 223:5–11, ECF No. 104-6)

[10] While Officer Defendants testified to this in their depositions, Jordan's initial police report stated Jones was leaving Denmore Avenue in a "hurried manner," but not that he was part of the group of individuals that dispersed. (Jordan Dep. 171:5–15, ECF No. 104-7; Incident Report at 3).

ECF No. 94-5; Jones Aff. ¶¶ 7–8). Instead, Jones alleges that he had just left a convenience store on Park Heights Avenue when Officer Defendants stopped him. (Jones Aff. ¶¶ 7–8).

There are also inconsistencies between Officer Defendants' testimony and their radio calls from the day of the arrest. First, Ofc. Tonks testified that he and Ofc. Jordan were in the same police car on August 17, 2014. (Tonks Dep. 39:13–14, 18–19, ECF No. 104-8). But Ofc. Jordan testified, and radio calls between Officer Defendants corroborate, that they were in separate vehicles. (Jordan Dep. 37:13–14, 196:1–3, ECF No. 104-7). Second, Ofc. Jordan testified that he stopped Jones immediately as he arrived at the scene, (Jordan Dep. 62:9–16, ECF No. 104-7), but Ofc. Tonks testified that Jones was walking away from a group of people and toward their police car. (Tonks Dep. 75:13, ECF No. 104-8). However, the radio calls between Officer Defendants indicate that the group of individuals dispersed as soon as they saw police cars, (Jordan Dep. 37:2, ECF No. 94-10), and that Officer Defendants then spent approximately three minutes canvassing the area for the suspected dealer before they stopped Jones. (Jordan Dep. 218:15–20, ECF No. 104-7). During this interval, Ofc. Jordan drove around the block to Elmer Avenue before returning to the intersection of Hayward and Denmore Avenues. (Radio at Aud. 389928). Further, based on the questions Ofc. Tonks asked Ofc. Jordan over the radio during this time—including which way the dealer was running, (Radio Aud. at 389925), and whether Ofc. Jordan still had eyes on the dealer, (Radio Aud. at 389926)—it seems that Officer Defendants were not with each other during this interval.

The passage of time, Officer Defendants' apparent physical separation, and the radio transmissions that suggest Ofc. Jordan spotted and pursued the suspected dealer before

11

returning to the 5200 block of Denmore Avenue and stopping Jones all cast doubt on Officer Defendants' assertions that they identified Jones as part of the group of individuals on Paton Avenue. These inconsistencies also prevent a conclusion at this stage that Officer Defendants had a reasonable articulable suspicion that Jones was engaged in illegal drug activity when they detained him. See Black, 707 F.3d at 537; Griffin, 589 F.3d at 152.

      b.     **Excessive Force**

To analyze an excessive force claim, the Court considers whether a reasonable officer would have determined that the degree of force used was justified by the threat presented. Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003). This is an objective inquiry that requires "careful attention to the facts and circumstances of each particular case," including "the severity of the crime at issue," whether the "suspect poses an immediate threat to the safety of the officers or others," and whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

Here, there are genuine disputes of material fact regarding Officer Defendants' use of force in arresting Jones. Specifically, Jones alleges that he did not run from Officer Defendants. (Jones Aff. ¶¶ 14–15). Nevertheless, according to Jones, Ofc. Jordan tackled him and struck him with either a baton or his fist after he was on the ground, rendering Jones unconscious. (Id. ¶¶ 16–19). Conversely, Ofc. Jordan alleges that Jones ran away from Officer Defendants, and that after he tackled Jones, a physical altercation ensued, at

which point Jones attempted to strike him. (Jordan Dep. 75:5–6, 12–18, ECF No. 94-10).[11] Further, while Ofc. Jordan testified that he tackled Jones on a patch of grass, Jones testified that his head hit the road. (Incident Report at 3; Jordan Dep. 140:5–6, ECF No. 104-7; Jones Aff. ¶ 17). These factual disputes must be resolved before it can be determined whether Officer Defendants used appropriately proportionate force in arresting Jones. See Buchanan, 325 F.3d at 527.

In sum, genuine disputes of material fact exist as to whether: (1) Officer Defendants had reasonable articulable suspicion to stop Jones; and (2) as to whether Officer Defendants used excessive force in detaining Jones. Accordingly, the Court will deny both Officer Defendants' and Jones's Motions as to Count I.

### 2. Fabrication of Evidence (Count IV)

"The Fourteenth Amendment protects 'against deprivations of liberty accomplished without due process of law.'" Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014) (quoting Baker v. McCollan, 443 U.S. 137, 145 (1979)). Individuals have a due process "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005) (quoting Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000)).

---

[11] Officer Defendants argue that Jones's hospital records confirm their version of events. The hospital records state "[t]his is a 52-year-old man who was running from the police after a failed interview, and he was tackled by the police landing on his side." (Hospital Records at 2). But the hospital records state that the doctor received this information from "a police officer." (Id.).

13

Here, Officer Defendants allege that Jones tossed a cigarette package that contained contraband while he was fleeing and that he had more drugs in his sock. (Tonks Dep. 82:2–4, 94-9; Jordan Dep. 75:11–13, ECF No. 94-10). Jones denies this and testified that he did not have any drugs in his possession. (Jones Aff. ¶¶ 21, 34). Because a genuine dispute of material fact exists as to whether Jones had contraband on his person at the time of his arrest, the Court cannot decide as a matter of law whether Jones's Fourteenth Amendment due process rights were violated.

Accordingly, the Court will deny both Officer Defendants' and Jones's Motions as to Count IV.

### 3. Violations of the Maryland Declaration of Rights (Count V)

Articles 24 and 26 of the Maryland Declaration of Rights are the state constitutional analogs to the Fourth and Fourteenth Amendments and are interpreted in pari materia with their federal counterparts. Doe v. Dep't. of Pub. Safety & Corr. Servs., 971 A.2d 975, 982 (Md.Ct.Spec.App. 2009); Padilla v. State, 949 A.2d 68, 78 (Md.Ct.Spec.App. 2008).

Consistent with its analysis of Counts I and IV, the Court concludes that genuine disputes of material fact exist as to the reason for Jones's detention, the use of force, and Jones's possession of contraband. The Court therefore cannot render judgment at this time regarding Jones's state constitutional claims. Accordingly, the Court will deny Officer Defendants' Motion as to Count V.

### 4. False Imprisonment & False Arrest (Counts VIII & IX)

In Maryland, the elements of false arrest and false imprisonment are the same: (1) "the deprivation of the liberty of another"; (2) "without consent"; and (3) "without legal

justification." Pegues v. Wal-Mart Stores, Inc., 63 F.Supp.3d 539, 542 (D.Md. 2014) (quoting Heron v. Strader, 761 A.2d 56, 59 (Md. 2000)). Legal justification, in this context, is "judged by the principles applicable to the law of arrest." Heron, 761 A.2d at 59 (quoting Montgomery Ward v. Wilson, 664 A.2d 916, 926 (Md. 1995)). Therefore, "the liability of the police officer for false imprisonment will ordinarily depend upon whether or not the officer acted within his legal authority to arrest." Id. (quoting Montgomery Ward, 664 A.2d at 926).

As discussed above, genuine disputes of material fact exist as to whether Officer Defendants had legal justification to detain Jones. Thus, the Court cannot yet render judgment regarding Jones's false arrest and false imprisonment claims. Accordingly, the Court will deny both Officer Defendants' and Jones's Motions as to Counts VIII and IX.

### 5. Assault & Battery (Count VII)

Battery is "a harmful or offensive contact with a person resulting from an act intended to cause the person such contact." Saba v. Darling, 575 A.2d 1240, 1242 (Md. 1990) (citing Restatement (Second) of Torts, § 13 (Am. Law. Inst. 1965)). Assault is either "(1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving an immediate battery." Dixon v. State, 488 A.2d 962, 966 (Md. 1985) (quoting Rollin M. Perkins, Perkins on Criminal Law 114 (2d ed. 1969)). Under Maryland law, "[a]n officer is not liable for battery for using a reasonable amount of force when effectuating a lawful detention or arrest." Stutzman v. Krenik, 350 F.Supp.3d 366, 383 (D.Md. 2018) (citing Ashton v. Brown, 660 A.2d 447, 471 n.24 (Md. 1995)). But an officer may be held liable for battery if the officer "uses excessive force, or force greater than is reasonably

15

necessary under the circumstances." French v. Hines, 957 A.2d 1000, 1037 (Md.Ct.Spec.App. 2008) (quoting 6A C.J.S. Assault § 35 (2008 Supp.)).

As the Court concluded in Part 1a of its analysis, genuine disputes of material fact exist as to whether Officer Defendants used excessive force in tackling, controlling, and handcuffing Jones. The Court, therefore, cannot render judgment at this point regarding Jones's assault and battery claims. Accordingly, the Court will deny both Officer Defendants' and Jones's Motions as to Count VII.

### 6. Malicious Prosecution (Count VI)

Under Maryland law, a plaintiff establishes his malicious prosecution claim by showing that: "(1) the defendant instituted a criminal proceeding against the plaintiff; (2) the criminal proceeding was resolved in the plaintiff's favor; (3) the defendant did not have probable cause to institute the proceeding; and (4) the defendant acted with malice or a primary purpose other then [sic] bringing the plaintiff to justice." Okwa v. Harper, 757 A.2d 118, 130 (Md. 2000) (first citing DiPino v. Davis, 729 A.2d 354, 373 (Md. 1999); then citing One Thousand Fleet Ltd. P'ship v. Guerriero, 694 A.2d 952, 956 (Md. 1997); and then citing Krashes v. White, 341 A.2d 798, 801 (Md. 1975)).

Here, a jury acquitted Jones of six out of seven charges, and the prosecutor declined to pursue the seventh count. (Criminal Case Docket). Further, as detailed in the preceding discussion, genuine disputes of material fact exist as to what justification Officer Defendants had for detaining Jones and as to Jones's possession of illegal substances, both of which inform the determination of whether Officer Defendants had probable cause to charge Jones. The Court, therefore, cannot render judgment at this point regarding Jones's

malicious prosecution claim. Accordingly, the Court will deny Officer Defendants' Motion as to Count VI.

### 7. Punitive Damages

Because Jones's claims remain live and any award of punitive damages would depend on the resolution of the facts underlying those claims, the Court will deny Officer Defendants' Motion with regard to the derivative issue of punitive damages. See In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prods. Liab. Litig., 300 F.Supp.3d 732, 736 n.3 (D.Md. 2018) ("A claim for punitive damages is derivative and therefore survives if the plaintiff['s] underlying claims that support it survive.").

## III. CONCLUSION

For the foregoing reasons, the Court will deny Officer Defendants' Motion for Summary Judgment (ECF No. 94) and Jones's Cross-Motion for Partial Summary Judgment (ECF No. 104). A separate Order follows.

Entered this 13th day of September, 2019.

_____/s/_____
George L. Russell, III
United States District Judge